**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **LAMARR WALLACE** | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil No.: **PJM 10-2190** |
| | * | |
| **RITE AID CORPORATION** | * | |
| | * | |
| Defendant. | * | |

**MEMORANDUM OPINION**

Lamarr Wallace, *pro se*, has filed this suit against his former employer, Rite Aid
Corporation ("Rite Aid"), alleging violation of the Family and Medical Leave Act of 1993
("FMLA"), 29 U.S.C. § 2601 *et seq*, and the Americans with Disabilities Act of 1990 ("ADA"),
42 U.S.C. § 12101 *et seq*. For the following reasons, Rite Aid's Motion for Summary Judgment
[Paper No. 15] is **GRANTED**.

**I.**

Wallace started working for Rite Aid in 2006 as an Assistant Store Manager, and in 2007,
became a Store Manager in Crofton, Maryland. A Store Manager, according to Rite Aid's job
description, must have the "ability to work weekends and extended days on a frequent basis." In
December 2007, Wallace began to receive poor performance reviews from Rite Aid
management. District Manager Ron Hendy sent e-mails to Wallace noting the poor condition of
his store, and Wallace was admonished for taking time off from work without obtaining prior
approval.

In spring 2008, Wallace began experiencing anxiety attacks, heart palpitations, and
headaches. He consulted Deborah Dunn, a physician's assistant with Potomac Physicians in

Laurel, Maryland, and received medication for depression and anxiety.  Wallace testified that he asked Hendy to assign an additional manager to the store and to reduce the number of nights he had to work.  Wallace never told Hendy he was taking medication or asked that Rite Aid provide an accommodation for his health condition.

In May 2008, Wallace submitted a Leave of Absence Application to Rite Aid.  He circled "Medical" for the type of leave requested and wrote, "I will be out for medication [*sic*] condition illness, due to extreme anxiety and stress."  The Application was supported by a form Dunn signed on June 5, 2008, which indicated that Wallace was disabled effective May 28, 2008 and that the length of the disability was "undetermined" and would "be re-evaluated weekly."

On June 19, 2008, Dunn wrote a "Return to Work Slip" for Wallace, stating that he could return to "full duty" on June 26.  Dunn revised that date in a second Return to Work Slip, indicating that Wallace could return to "full duty" on July 7.  In a handwritten note to Wallace dated June 26, 2008, Dunn told him "to return to work on the 7th of July.  No Exceptions!"  "I will not write any more notes," Dunn declared.

Despite the admonishment, Wallace never returned to work.  On July 30, 2008, Rite Aid sent Wallace a letter by certified mail stating that he had failed to return to work as scheduled on July 7, that the company had made numerous attempts to get in touch with him, and that if he did not contact his District Manager by August 4 concerning his return, he would be voluntarily terminated.  Wallace failed to contact Hendy and was discharged.

Wallace alleges that he never returned to work because Dunn had faxed a third Return to Work Slip to Rite Aid pushing back his return date to August 28, 2008.  Wallace, however, has produced no evidence of this Slip, conceded that he never saw the Slip himself, and testified that it was merely his understanding that Dunn had sent it to Rite Aid.  Ride Aid denies ever having

received it.  No Third Return to Work Slip was produced in response to a subpoena Rite Aid

served on Potomac Physicians for any and all medical records relating Wallace.

On September 16, 2009, Wallace filed a complaint against Rite Aid with the U.S. Equal

Employment Opportunity Commission and the Maryland Commission on Human Rights.

Thereafter, the EEOC provided Mr. Wallace with a "Notice of the Right to Sue."

On August 10, 2010, Mr. Wallace filed the instant suit alleging violation of the FMLA

and the ADA.  Wallace asserts that "Rite Aid Corporation failed to properly accommodate [his]

disability request" and that "Rite Aid Corporation terminated [him] while on FMLA violating

[sic] ADA act."  On May 27, 2011, Rite Aid filed a Motion for Summary Judgment to which

Wallace has not responded.

## II.

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides that "[t]he court

shall grant summary judgment if the movant shows that there is no genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law."  The Supreme Court

has clarified that this does not mean that any factual dispute will defeat the motion: "By its very

terms, this standard provides that the mere existence of *some* alleged factual dispute between the

parties will not defeat an otherwise properly supported motion for summary judgment; the

requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 247-48 (1986) (emphasis in original).  A material fact is one "'that might affect

the outcome of the suit under the governing law.'"  *Spriggs v. Diamond Auto Glass*, 242 F.3d

179, 183 (4th Cir. 2001) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  A

disputed fact presents a genuine issue "'if the evidence is such that a reasonable jury could return

a verdict for the non-moving party.'"  *Id.* (quoting *Celotex*, 477 U.S. at 323).

The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court, however, must also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex*, 477 U.S. at 323-24).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat*, 346 F.3d at 525 (alteration in original) (quoting Fed. R. Civ. P. 56(e)). Although *pro se* pleadings are held to less stringent standards, *see Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), they "must still set forth facts sufficient to withstand summary judgment." *Symeonidis v. Paxton Capital Group, Inc.*, 220 F. Supp. 2d 478, 480 n. 4 (D. Md. 2002). The existence of a "'mere scintilla of evidence'" is not enough to defeat a motion for summary judgment. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002) (quoting *Phillips v. CSX Transp., Inc.*, 190 F.3d 285, 287 (4th Cir. 1999) (per curiam)). Nor can the nonmoving party create a genuine issue of material fact through speculation or "the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985) (citation omitted); *see also Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) ("Unsupported speculation is not sufficient to defeat a summary judgment motion.").

### III.

Wallace alleges that Rite Aid violated the FMLA when it discharged him while on approved medical leave.  Rite Aid counters that Plaintiff was not on FMLA leave when his employment was terminated, and therefore his FMLA claim is without merit.

The FMLA entitles eligible employees to take up to twelve weeks of unpaid leave in any twelve-month period because of a "serious health condition," *see* 29 U.S.C. § 2612(a)(1)(D), and gives them the right to return to the same or an equivalent position after their absence.  *See Babcock v. Bellsouth Adver. & Publ'g Corp.*, 348 F.3d 73, 76 (4th Cir. 2003).  A "serious health condition" is an "illness, injury, impairment, or physical or mental condition" that prevents the employee from performing the functions of his or her position and involves either "inpatient care in a hospital, hospice, or residential medical care facility" or "continuing treatment by a health care provider."  29 U.S.C. §§ 2611(11), 2612(a)(1)(D).  Under the FMLA, an employer may require that a request for leave be supported by documentation from the employee's health care provider.  *Rhoads v. F.D.I.C.*, 257 F.3d 373, 383 (4th Cir. 2001).

To establish unlawful interference with FMLA benefits, an employee must prove that: (1) he was an eligible employee, (2) his employer was covered by the statute, (3) he was entitled to leave under the FMLA, (4) he gave his employer adequate notice of his intention to take leave, and (5) the employer denied him FMLA benefits to which he was entitled.  *See Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 507 (6th Cir. 2006); *see also Yashenko v. Harrah's NC Casino, Co., LLC*, 446 F.3d 541, 546 (4th Cir. 2006); *Rodriguez v. Smithfield Packing Co.*, 545 F. Supp. 2d 508, 516 (D. Md. 2008).

The Court finds that summary judgment is appropriate because Wallace cannot show that Rite Aid denied him FMLA benefits to which he was entitled.  On May 13, 2008, Wallace submitted a Leave of Absence Application supported by a statement from Dunn that the length

of his disability was "undetermined" and would "be re-evaluated weekly."  Over the course of the next several weeks, Dunn set two dates for his return to Rite Aid.  The first Return to Work Slip stated that Wallace could return to full duty on June 26, and the second stated he could return to full duty on July 7.  There is no evidence that Dunn postponed his start date again, and Wallace's speculation about the alleged third Return to Work Slip is insufficient to create a genuine dispute of material fact.  Wallace never returned to work after the basis for his medical leave expired on July 7.  As of July 7, he was no longer entitled to FMLA benefits.  It follows that Rite Aid's decision to terminate Wallace after he failed to show up for work or contact Hendy did not interfere with his rights under the FMLA.

Once Wallace's FMLA leave expired, Rite Aid was entitled to treat him as they would any other employee and hold him responsible for coming to work.  It is well established that discharging an employee who fails to report to work is a valid, nondiscriminatory reason for termination.[1]  *See, e.g.*, *Moticka v. Weck Closure Sys.*, 183 F. App. 343, 349 (4th Cir. 2006) (affirming grant of summary judgment in favor of employer where employee was terminated for not showing up for work after employer had generously given her thirty-four weeks of medical leave); *Peeples v. Coastal Office Prod., Inc.*, 64 F. App. 860, 864 (4th Cir. 2003) (affirming grant of summary judgment in favor of employer where employee was terminated for abandoning his job after he left work and for several weeks provided employer with vague or misleading information about his health condition).  The Court therefore grants summary judgment in favor of Rite Aid.

**IV.**

---

[1] Courts have even held that an employer may terminate an employee who is on FMLA leave for failing to comply with attendance or "call-in" policies.  *See Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 1008-09 (10th Cir. 2011); *Bacon v. Hennepin County Med. Ctr.*, 550 F.3d 711, 714-15 (8th Cir. 2008); *Lewis v. Holsum of Fort Wayne, Inc.*, 278 F.3d 706, 709-10 (7th Cir. 2002).

Wallace's second claim is that Rite Aid failed to properly accommodate him under the ADA.  To establish a prima facie case for failure to accommodate, a plaintiff must show that (1) he was an individual who had a disability within the meaning of the statute, (2) the employer had notice of his disability, (3) with reasonable accommodations he could perform the essential functions of the positions, and (4) the employer refused to make such accommodations.  *Rhoads v. F.D.I.C.*, 257 F.3d 373, 387 n. 11 (4th Cir. 2001) (citation omitted).  It is the plaintiff's burden to establish that the proposed accommodation is reasonable.  *Lamb v. Qualex, Inc.*, 33 F. App. 49, 59 (4th Cir. 2002).

Assuming that Wallace's stress, anxiety, and heart palpitations constituted a disability within the meaning of the ADA, his claim still fails.  First, there is no evidence that he informed Rite Aid about his condition and the medication he was taking.  He never explained to Hendy or anyone else why he asked Rite Aid to assign an additional manager to the store and to reduce the number of nights he had to work.  Second, his requests are unreasonable.  The ADA does not require an employer to accommodate a disabled employee by reallocating essential job functions to another employee.  *See Crabill v. Charlotte Mecklenburg Bd. of Educ.*, 423 F. App. 314, 323 (4th Cir. 2011); *Martinson v. Kinney Shoe Corp.*, 104 F.3d 683, 687 (4th Cir. 1997) ("The ADA simply does not require an employer to hire an additional person to perform an essential function of a disabled employee's position.").  An accommodation that requires other employees to work harder or longer is unreasonable.  *Rehrs v. Iams Co.*, 486 F.3d 353, 357 (8th Cir. 2007); *Mason v. Avaya Commc'ns, Inc.*, 357 F.3d 1114, 1121 n. 3 (10th Cir. 2004); *Turco v. Hoechst Celanese Corp.*, 101 F.3d 1090, 1094 (5th Cir. 1996).  Wallace does not dispute that part of a Store Manager's job is "to work weekends and extended days on a frequent basis."  Yet he asked Rite Aid to do the unreasonable—to shift some of his hours to other employees and to hire another

7

manager to further reduce his workload.  Because Wallace cannot establish the essential elements of his ADA claim, the Court will grant summary judgment in favor of Rite Aid.

**V.**

For the foregoing reasons, the Court **GRANTS** Defendant Rite Aid's Motion for Summary Judgment [Paper No. 15] as to all Counts.  Final Judgment will be entered in favor of Rite Aid and against Plaintiff Wallace and the case will be **CLOSED**.

A separate Order will **ISSUE**.

_____ /s/ _____ ___
                        **PETER J. MESSITTE**
                    **UNITED STATES DISTRICT JUDGE**

**February 1, 2012**